May it please the Court, Counsel, I'm Megan Flynn. I represent Mark Robustelli and the estate of Charles Bench. This is Kemper's declaratory action to determine if its three covered insureds share a single coverage limit for their potential liabilities to my clients. Oregon has a very well-defined sequential analysis for how we answer this question, and you only go out door number one if the policy explicitly defines the term that's in dispute. Here that term is occurrence, and this policy doesn't explicitly define the endorsement's term occurrence. The endorsement is the relevant coverage in dispute. Probably the best Oregon example of how this explicit definition concept plays out is the St. Paul Fire and Marine case, where there's a lot of policies in that case. But the one in particular that talked about occurrence had an endorsement with a definition of occurrence and a basic underlying policy with a broad, generally applicable definition of occurrence. And the Court said there's no conflict here, even though the definitions are different, because the only one that has anything to do with the endorsement is the one that explicitly applies to the endorsement. Here we don't even have a broadly applicable definition of occurrence in the underlying policy. I was going to say, there is a definition elsewhere, I mean, in the same policy, but a different section. There is some definition. It's not even applicable to the entire underlying coverages. It's in a section that says these are definitions for sections one and two coverage of the main policy. It doesn't necessarily require that it have a different meaning, though. Correct. It just requires us to think a little harder. Correct. Is there anything that doesn't comport with common sense or ordinary understanding of the word occurrence in the definition that's in the policy? No. And the thing about the framework we're following is we're not trying to find out what one meaning occurrence has in this policy. We're trying to find out if it's implausible that there are more than one potential meanings. Well, one of the things that I noticed that your brief did not, as I recall it anyway, deal with, is condition number one that says that it conditions to the endorsement. And the first one is notice of occurrence. And if you read the notice of occurrence, when there's an occurrence that may be covered by this endorsement, we must be notified in writing as soon as possible, and it goes on from there. Doesn't that suggest to an ordinary reader that an occurrence is an accident, a single happening, the same kind of meaning that common sense would give us and that the other part of the policy would give us? It could. It could also suggest that occurrence means something that happened from which I, as an insured, could have liability. And for the negligent driver, that obviously happened at the point of the collision. For the parents who independently have potential liability, not vicarious, but their own direct liability, the occurrence for them is the risk that they're going to be exposed to liability. And according to your theory, Ben, the driver's mother and father should have independently called the insurance company and each sort of self-reported. Right. The father should have called and said, gosh, my kid went out and did this, so I may be liable. Let me pass the phone to my wife, and she'll tell you what her problem is. And it may be that in those kinds of situations, a person would know at the point that they understood they had some exposure. That's not really the way people act, is it? I mean, it seems sort of silly. Well, if I were being sued and I were covered under this policy, I would want to know that when it told me I had coverage, separate coverage from my husband and my son for my own liability, that if I was exposed to liability separate from them, regardless of what the harm was, I would want to know. But see, the notice of occurrence happens long before there's any lawsuit. It isn't notification of litigation. It's notification of an occurrence. Correct. And so if my kid gets into an accident, that's an occurrence for him or her because that's an accident. It's a one-time, unexpected happening. But I don't think that a reasonable policyholder would think that the occurrence is broader than that, for the notification purpose at least. And this is part of the endorsement. So if this suggests a meaning, then we have to use that as context. Right. And that's the step three of the analysis, is we do look at all those things for context, but we're not looking to see what makes the most sense. We're not looking to see even what a reasonable policyholder would expect because that's not Oregon standard. We're looking to see whether, in light of the context, something in the policy rules out the plausible interpretation that a number of other courts have given to occurrence. Well, if there's, at the end of that whole process, there's still a tiebreaker in favor of the insured. There's still a tiebreaker, right. At the very end. Right. At the end of that whole process, if we're still left with nothing in the context of the policy ruling out the interpretation that some courts have given as a matter of law to determine occurrence, then the tiebreaker goes to the insured individuals. And that's where we should be getting here and where the district court should have gone because there is nothing in the policy. There's no explicit definition that rules out that interpretation. There's no plain meaning of this term. If you look at, Kemper had us look at the Webster's definition, which is something that takes place. Well, as the courts dealing with the multiple incidents of malpractice kind of cases point out, something that takes place could be two different people looked at this X-ray and missed the diagnosis, same injury. Or I three times failed to diagnose this cancer, same injury. Something that takes place is the disease. Something that takes place is the negligence. And so there's no external meaning that eliminates the ambiguity, which does take us to the final step where we do. It is important, as Judge Graber pointed out, to go through each of these parts. One of the parts that's important is the nature of the coverage and that it specifies it applies separately to each covered individual. That purpose is most furthered by coverage that gives each of these three individuals the million-dollar coverage that the policy says it provides. It's also plausible that the context appears in a limit of liability, and it's plausible that Kemper would want to limit its liability in this way in a lot of circumstances. In some of the cases that the briefs go through talk about situations where your liability is much greater if a single act of negligence resulting in multiple harms is treated as multiple occurrences as opposed to a single occurrence. So in context, you still have that potentially plausible meaning. But if I could, I'd like to save my last 90 seconds for rebuttal. You certainly may, Counsel. You certainly may. We'll hear from the insurance company. May it please the Court, my name is Beth Skillern, and I represent Kemper in this matter. As the Court is aware, this case arises out of an auto accident that resulted in injury to the appellants and their subsequent claims against the named insureds on a Kemper policy. Patrice Thatcher, her husband James Stevens, and their son Kevin. Kemper initially filed this action to address three coverage questions. The first question was whether there was coverage under the auto policy for claims against Kevin. There was never any question about claims against Kevin's parents, the named insureds, under the auto policy, and the limits of that policy were paid to appellants for their injuries. The second question was whether there was coverage under the personal liability portion of the homeowner's policy for the claims against Kevin and his parents. And in that situation, or under that question, the appellants conceded that the exclusion for injury arising out of the ownership or use of a vehicle applied and that no coverage was available. The third question, and the question that's before the Court today, is whether the coverage available under the endorsement for the claims against Kevin and his parents provide coverage with limits of $1 million or $3 million. Kennedy So Kemper concedes that it may be liable for up to $1 million. Patrice That's correct. There's no question about that. The question is what ---- Kennedy Counsel, on our bench we have a document which looks like it's, except for the record, 1, 2, 3, a portion of the policy. Is that your exhibit or is that your opponent's? Patrice I submitted it. My opposing counsel has no objection to it. It's a copy of ER 1 through 4, which is the personal catastrophe liability endorsement. And I'll ask you to refer to specific sections of that in a minute. Kennedy All right. We agree with counsel that the Hoffman analysis applies here. What I would like to do is focus on the final steps of the Hoffman analysis and give you three reasons why. Looking at the context of the policy, the context of the use of occurrence in the endorsement, why the only plausible interpretation of the endorsement is that there was one occurrence. First, and I'd like you to direct your attention to page ER 1 of the endorsement, and on the right-hand side is the insuring agreement, coverage A, personal liability, and direct your attention to the words in that, which says that they will pay damages for bodily injury, personal injury, or property damage a covered person is legally responsible for which exceeds the retained limit. The important thing about that language is that is what the insurance company is going to pay for. The parents' alleged negligence in this case alone, if proved, would not establish any bodily injury. Without the subsequent acts of Kevin and his use of the automobile, there would be no bodily injury and no damages for bodily injury. Only the auto accident caused the bodily injury. So no matter how many theories of liability are alleged, the damages for bodily injury necessarily result from the auto accident, and there was just one auto accident. Now, this is different than the situation in the Arizona and Nevada cases that appellants rely on. In those cases, the court found more than one occurrence because the court specifically talked about how the separate negligent acts caused separate injuries. In connection with the diagnosis, the court specifically noted that there was nothing in the record that showed the first doctor's conduct caused the second doctor's conduct, which would be the case here or in any case involving negligence of parents and a minor child using an automobile. In that case, there were specific, discrete acts of negligence that caused separate, discrete injury. And in the Nevada case, the court goes out of its way to note that the evidence of that is based on the doctor's own affidavit. In this case, there was one event causing the injuries, and that was the auto accident. Second point I'd like to make is that construing occurrence to mean an act of negligent is just not reasonable or plausible. The endorsement refers to occurrence in the retained limit section, and as the court has noted, elsewhere in the endorsement. The parties in this case have focused on the use of the term retained occurrence, excuse me, in the retained limit of liability section, which is on page 2, ER2, on the left-hand column. The second paragraph is the key paragraph. It says we will never pay more than the limit of liability shown in this endorsement or in the declarations for all damages resulting from one occurrence. The parties agree that the declarations here show $1 million for Covery J for the liability limit in the endorsement. If the appellants are correct that every act of negligence, regardless of whether it caused injury or damage as an occurrence, there would rarely, if ever, be one occurrence and the limitation would be meaningless. In fact, if you look carefully at the arguments made by appellants, they're really not attempting to treat every act of negligence or every alleged act of negligence of the parents as a separate occurrence. If they did, there would be many more than two acts of negligence and more than two occurrences. What they're really arguing is that every theory of liability is an occurrence. That's not a reasonable interpretation of occurrence. The only reasonable, plausible, common-sense, ordinary understanding of occurrence is that the event causing the injuries is the occurrence, and in that case, this is the auto accident. To prove their point that this would be even-handed, appellants attempt to offer some examples of how this would work to the advantage of the insurance company in some cases. The examples are really meaningless. For example, one of the first examples in the briefing involves the single act of driving the wrong way on a freeway but causing multiple collisions with separate vehicles. First of all, that's not the situation here where we have acts of negligence and a driver of a vehicle. But if you look at the example, one driver, one insured under a policy, causing multiple acts, that could be a number of occurrences, depending on the specific facts. We just can't tell from these examples what facts existed. Maybe there was a time lapse between the striking of the vehicles. They could very well be separate occurrences, but it depends on the circumstances of the case what exactly is going to be the occurrence, and in this case, it must be the auto accident. The final point I'd like to make is that interpreting the occurrence to mean the act of negligence or theories of liability ignores additional language in the endorsement, and that's the language in the final paragraph of the retained limit of liability section, which says that the insurance provided by this endorsement applies separately to each covered person a claim is made against, but including more than one covered person of the policy will not increase our limit of liability. That language, in order to use appellant's theory of interpretation of the act, every act constituting a separate occurrence, no matter how many insureds are under the policy, requires us to just negate that particular paragraph, which is in direct violation of Hoffman, where the court said that you can't ignore any part of the policy and it's not reasonable to assume that the provisions are meaningless. In this case, there are three covered persons on the policy. Claims were made against all three of the individuals. The claims against the parents are based on their negligent supervision, entrustment, and so forth, but there was only one accident, and that resulted from the use of the vehicle by their son, and that was the accident that resulted in bodily injury, and that's one occurrence, and the limit of liability is $1 million. So for all of the reasons discussed in our briefing and for those discussed today, Kemper asked the court to affirm the trial court. Thank you. Thank you, counsel. Ms. Flynn, you have some reserve time. The limit here is potentially $3 million, not because every separate theory of liability is an occurrence. What we have are three separate people separately covered under this policy with separate potential liability. Because there are three occurrences? Because each of those individuals' acts of negligence that cause harm is a source of separate liability for each of those individuals, and for that person, that is their occurrence. The occurrence is the act of negligence itself? It can be. I don't want to know what it can be. I want to know what you think it is. We have to make a decision here. Well, your decision is can it be my way. If it can be my way, then it is my way. Okay. Well, just tell me what you want me to decide here. I want this court to say that it is plausible that when two people separately go out and act in separately negligent ways that happen to cause the same harm, those people who then separately are exposed to liability for that harm have separate coverage limits, have separate occurrences, and under the endorsement have separate coverage up to the maximum limit. Doesn't that violate all of our standard court rules about double recoveries and so forth? If two people who are involved in a negligent act and it causes damage, you don't get full coverage against each of the persons. Just under our ordinary court rules. Under our ordinary court rules, on the underlying claim, if the damages are such and the liability allocation is such, each of these individuals could be liable separately for $3 million. And what Kemper wants to say is even if that happens, they don't each get their $3 million. They don't each could be separately liable for $1 million plus. What Kemper wants to say is that the only interpretation of the policy is that those individuals, even though liable for more than $1 million, don't get $1 million. But under the tort system, it's not just that there's an injury. It's that you have a source of liability, and that's why there's an occurrence. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee